

FILED

4:23 pm, 5/14/20

Tim J. Ellis
Clerk of Court

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF WYOMING

*In re:*

**MOUNTAIN STATES/ROSEN, LLC,**

**Debtor.**

**Case No. 20-20111**

**Chapter 11**

## INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO COBANK, <u>AND (III) GRANTING RELATED RELIEF</u>

THIS MATTER came before the Court on the Motion for Interim Order Authorizing Use of Cash Collateral and Setting Further Hearing (the "<u>Motion</u>") filed by the Debtor Mountain States/Rosen, LLC ("<u>MSR</u>" or "<u>Debtor</u>") on March 23, 2020, in the above-captioned Chapter 11 case (the "<u>Case</u>") pursuant to section 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et. seq.* (as amended, the "<u>Code</u>"), Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, requesting, among other things, entry of this interim order (this "<u>Interim Order</u>"):

I.      authorizing the Debtor to use cash collateral (as such term is defined in section 363(a) of the Code, "<u>Cash Collateral</u>") through the Termination Date (as defined below), pursuant to the terms and conditions set forth in this Interim Order;

II.     scheduling a further hearing on the Motion to consider entry of any further orders on cash collateral; and

III.      authorizing the Debtor to provide adequate protection to CoBank, ACB

("CoBank") for the use of Cash Collateral.

This Court having conducted interim hearings (the "Interim Hearings") on April 15,

2020, and May 13, 2020, to consider the Motion and the relief requested herein, and after

considering all the pleadings filed with the Court, and after consideration of the evidence

presented at the Interim Hearings, and having found that, under the circumstances, due and

sufficient notice of the Motion and the Interim Hearings was provided by the Debtor in

accordance with Fed. R. Bankr. P. 2002, 4001, and 9014 and all applicable local rules, and

it appearing that approval of the relief requested in the Motion is fair and reasonable and

in the best interests of the Debtor, its creditors, its estate and all parties in interest, and is a

sound and prudent exercise of the Debtor's business judgment, and is essential for the

continued operation of the Debtor's businesses and the preservation of the value of the

Debtor's assets; and after due deliberation and consideration, and good and sufficient cause

appearing therefor:

**THE DEBTOR AND COBANK STIPULATE AND REPRESENT TO THE**

**COURT THAT:**

**A.      Petition Date.**   On March 19, 2020, (the "Petition Date"), the Debtor filed

a voluntary petition with this Court to commence this Case under Chapter 11 of the

Bankruptcy Code.  Since the Petition Date, the Debtor has remained in possession and

control of its assets as a debtor-in-possession pursuant to sections 1107 and 1108 of the

Code. An official committee of unsecured creditors (a "<u>Committee</u>") has been appointed.

    **B.**     <u>**Jurisdiction**</u>.   This Court has subject matter jurisdiction to consider this

matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28

U.S.C. § 157(b). The statutory predicates for the relief sought herein are sections 105, 361,

362, 363 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014.

    **C.**     <u>**Notice**</u>. The Interim Hearings with respect to the Motion were held pursuant

to the authorization of Federal Rule of Bankruptcy Procedure 4001. Notice was served on

the parties listed on the certificate of service filed in respect of the Motion in the manner

set forth in the certificate. Under the circumstances, such notice of the Motion, the relief

requested therein and the Interim Hearings comply with Bankruptcy Rule 4001.

    **D.**     <u>**Debtor's Stipulations Regarding Pre-Petition Indebtedness**</u>. In

connection with this Interim Order, the Debtor admits, acknowledges, represents,

stipulates, and agrees that:

        i.     Prior to the Petition Date, Debtor and other non-debtor co-borrowers

entered into that certain Credit Agreement numbered 00054006SLA dated as of

August 23, 2018 (as amended restated, supplemented or otherwise modified from

time to time, the "<u>Credit Agreement</u>") with CoBank. The Credit Agreement,

amendments thereto, and all documents, instruments, and agreements executed in

connection therewith or related thereto are hereinafter referred to as the "<u>Loan</u>

<u>Documents</u>."

ii.      Pursuant to the Loan Documents, Debtor, Mountain States Lamb and

Wool Cooperative ("<u>MSLW</u>"), and Mountain States Lamb Cooperative ("<u>MSL</u>";

collectively with Debtor and MSLW, the "<u>Borrowers</u>"), together with Rosen of

Colorado, Inc. ("<u>Rosen CO</u>"), B. Rosen and Sons of Colorado, Inc. ("<u>B. Rosen</u>"),

and Barco Meat Brokerage Corp. ("<u>Barco</u>"; together with Rosen CO and B. Rosen,

the "<u>Guarantors</u>"), incurred loan obligations (the "<u>Secured Obligations</u>") in favor of

CoBank, which Obligations were in default as of the Petition Date. As of the

Petition Date, the Secured Obligations owed to CoBank without defense,

counterclaim or offset of any kind, totaled no less than $18,182,324.49.

iii.      The Loan Documents are in all respects valid and binding agreements

and obligations of the Debtor, not subject to any claim, counterclaim, setoff,

recoupment, expense, subordination, or defense of any kind or nature which would

in any way affect the validity, enforceability, and non-voidability of the Obligations,

or which would reduce or affect the obligation of the Debtor to pay any of such

Obligations.

iv.      As security for the Obligations, Debtor executed certain deeds of trust,

security agreements, pledge agreements, deposit control agreements, and other

collateral documents and agreements (as amended, restated, supplemented or

otherwise modified from time to time and in effect on the Petition Date, collectively, the "Security Documents") granting to or for the benefit of CoBank a first priority valid, perfected and enforceable security interest (the "Prepetition Liens") in/on substantially all, if not all, of the Debtor's assets and properties (all collateral pledged by the Debtor to secure repayment of the Obligations under the Loan Documents the "Prepetition Collateral").[1] The Security Documents constitute and are part of the Loan Documents. The property of MPSC, Inc. is not part of the Prepetition Collateral.

     v.     (a) The Loan Documents remain in full force and effect and constitute legal, valid and binding obligations of the Debtor; (b) no offsets, rights of recoupment, defenses or counterclaims to the Secured Obligations exist; (c) no portion of the Secured Obligations is subject to challenge, avoidance, recharacterization, disallowance, reduction or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (d) the Loan Documents are valid and enforceable by CoBank against the Debtor; (e) the liens and security interests of CoBank constitute valid, binding, enforceable and perfected liens in and to the Prepetition Collateral, having the priority set forth in the Loan Documents, and are not subject to avoidance, reduction, disallowance,

---

[1]    Non-debtor Borrowers MSLW and MSL also each granted to and/or for the benefit of CoBank a first priority valid, perfected and enforceable security interest in substantially all of the assets of MSLW and MSL.

disgorgement, counterclaim, surcharge or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (f) the Secured Obligations constitute allowed secured claims against the Debtor's estate; and (g) no claim of or cause of action held by the Debtor exists against the CoBank or their agents, whether arising under applicable state or federal law (including, without limitation, any "lender liability" causes of action or recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the Loan Documents (or the transactions contemplated thereunder), Secured Obligations or Prepetition Liens, including without limitation, any right to assert any disgorgement or recovery.

      vi.      All of the Debtor's cash and cash equivalents, including any cash in deposit accounts, wherever located, and all cash that constitutes proceeds of Prepetition Collateral (as defined in the Loan Documents) are part of the Prepetition Collateral and, therefore, are Cash Collateral subject to the Prepetition Liens of CoBank.

      vii.      The Debtor's cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents in any form, including without limitation income, proceeds, products, rents or profits of property or cash arising from the collection, sale, lease, disposition, use, or conversion to cash of any

Case 20-20111    Doc 119    Filed 05/14/20    Entered 05/14/20 16:25:42    Desc Main
Document    Page 7 of 30

property, or fees, charges, accounts, or other payments for the use or occupancy of facilities, and such other forms of property as are contemplated under 11 U.S.C. § 363, constitute cash collateral of CoBank governed by 11 U.S.C. § 363, whether CoBank's liens or security interests (including, without limitation, any replacement liens or security interests) existed at the commencement of this case or arise thereafter pursuant to this Order or any other order of the Court or applicable law or otherwise, and whether such property that has been converted to cash existed as of the Petition Date or arose or was generated thereafter (collectively, the "Cash Collateral").  For the avoidance of doubt, the property of MPSC, Inc. is not considered Cash Collateral nor subject to post-petition replacement liens.

viii.    CoBank has made a demand for adequate protection of its Prepetition Collateral and that without adequate protection of the Prepetition Collateral, the Debtor's use of the Cash Collateral and the depreciation of non-Cash Collateral assets, if any, would entitle CoBank to the adequate protection provided in this Order in order to maintain CoBank's position.

ix.    The Debtor represents that it is without sufficient funds to support its continuing operations unless it is permitted to use Cash Collateral, and the Court finds that the present circumstances require that Debtor be permitted to make use of the Cash Collateral, on the terms set out herein.

{Z0314885/1 }
US.127972219.04

7

x.      CoBank has agreed to consent to the use of its Cash Collateral provided it receives all the adequate protection provided for herein, and all of the terms and conditions of this Order are met.

E.    **Approved Budget**. Attached hereto as <u>Exhibit A</u> is a rolling 13-week cash flow budget setting forth all projected cash receipts and cash disbursements (by line item) on a weekly basis (the "<u>Initial Approved Budget</u>").   The Initial Approved Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by the Debtor and that are consented to by CoBank and reviewed by the Committee, without subsequent notice to or order of the Court (each such additional budget, a "<u>Supplemental Approved Budget</u>" and together with the Initial Approved Budget, the "<u>Approved Budget</u>").  The Initial Approved Budget is an integral part of this Interim Order and has been relied upon by CoBank in consenting to this Interim Order, to permit the use of the Cash Collateral. Unless further extended in writing by CoBank, CoBank's approval of the Interim Approved Budget extends only until the Termination Date (defined below). The Debtor represents that the Approved Budget (a) includes and contains the Debtor's projection of all operational receipts and all operational disbursements, fees, costs and other expenses that will be payable, incurred and/or accrued by the Debtor during the period covered by the Approved Budget and (b) based on the Debtor's projection, is

achievable and will allow the Debtor to operate in the Chapter 11 Case, sell assets, as authorized by the Court, and pay postpetition obligations as they come due.

      **F.**   **No Credit on More Favorable Terms**.  Based upon the pleadings and proceedings of record in the Chapter 11 Cases, given the Debtor's current financial condition, financing arrangements, and capital structure, the Debtor is unable to obtain financing and is unable to obtain adequate unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code or unsecured credit with administrative priority under section 364(c)(1) of the Bankruptcy Code. The Debtor is unable to obtain CoBank's consent to use of Cash Collateral without the Debtor (i) granting to the CoBank (x) the Superpriority Claims (as defined below) and (y) the Adequate Protection Liens, as provided herein, and (ii) providing CoBank additional adequate protection as provided herein.

      **G.**   **Reasonable; Good Faith**. The terms of the Cash Collateral arrangement described in this Interim Order are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  The terms concerning the Debtor's use of Cash Collateral as provided for in this Interim Order were negotiated in good faith and at arms' length between the Debtor and CoBank. CoBank is consenting to the use of Cash Collateral under the terms of this Interim Order in good faith as that term is used in section 363 of the Bankruptcy Code and is entitled to the benefits attendant to such finding.

**H.**    **Use of Cash Collateral**.   An immediate and critical need exists for the Debtor to use the Cash Collateral. The Debtor has represented that it lacks sufficient available sources of working capital and financing to operate, reorganize or effectuate an orderly wind-down of its remaining business. The Debtor has further represented that, without the use of Cash Collateral, the continued operation of the Debtor's business and the preservation of the value of the Debtor's remaining assets would not be possible. Accordingly, the Debtor and its estate would suffer immediate and irreparable harm unless the Debtor is authorized to use Cash Collateral on the terms and conditions set forth herein.

**I.**    **Adequate Protection**. The adequate protection provided to CoBank for any diminution in the value of its respective interests in the Prepetition Collateral from and after the Petition Date, including, without limitation, from the use of the Cash Collateral, pursuant to the provisions of this Interim Order, is consistent with and authorized by the Bankruptcy Code and is offered by the Debtor to protect CoBank's interests in the Prepetition Collateral in accordance with sections 361, 362 and 363 of the Bankruptcy Code. The adequate protection provided herein, and other benefits and privileges contained herein are necessary in order to protect CoBank from the diminution in value of its Prepetition Collateral and obtain the foregoing consents and agreements.

**J.**    **Good Cause Shown; Best Interest**. The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). Absent entry of this Interim Order, the Debtor's business, property, and estate will be immediately and

irreparably harmed. This Court concludes that good cause has been shown and that entry of this Interim Order is in the best interest of the Debtor's estate and creditors as its implementation will, among other things, allow for the continued operation of the Debtor's existing business, and enhance the Debtor's prospects of maximizing the value of its remaining assets.

    **K.**    <u>**No Liability to Third Parties**</u>. The Debtor stipulates and the Court finds that in administering any loans, in permitting the Debtor to use Cash Collateral, in accepting the Interim Approved Budget or any future Supplemental Approved Budget or in taking any other actions permitted by this Interim Order, CoBank shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor.

    Based on the foregoing, and upon the record made before this Court at the Interim Hearings, and good and sufficient cause appearing therefore,

    **IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

    **1.**    <u>**Approval of Interim Order**</u>. The Motion is approved on the terms and conditions set forth in this Interim Order. Any objections that have not previously been withdrawn are hereby overruled. This Interim Order shall become effective immediately upon its entry. All objections to the entry of this Interim Order that have not been withdrawn are hereby overruled.

2.    **Limited Authorization to Use Cash Collateral/Insurance/Taxes**. From

the date of this Order to the Termination Date (defined below) (the "Interim Period")  and

in strict compliance with this Interim Order, Debtor shall pay from the Deposit Accounts

(defined below) the current, normal, actual, ordinary, and reasonable post-petition

expenses of operating and maintaining the businesses (the "Post-Petition Expenses"),

which amounts and the extent of said payments are categorized and enumerated in the

Approved Budget.

The Debtor's right to use the Cash Collateral as herein authorized shall terminate (a

"Termination") on the earliest of (i) three (3) business days after service of written  notice

(which notice, in addition to the Debtor, shall also be given to counsel to the Committee)

by CoBank of the occurrence of an Event of Default (as defined in Paragraph 7 below); (ii)

5:00 p.m. (prevailing mountain time) June 30, 2020; (iii) as otherwise ordered by the Court

(the "Termination Date").  Any Termination shall not affect the validity, priority or

enforceability of any and all rights, remedies, benefits and protections provided to CoBank

under this Interim Order as of the Termination Date, which rights, remedies, benefits and

protections shall survive such Termination.

Debtor shall maintain insurance as required by the Loan Documents and Security

Documents on all insurable property now or hereafter owned by it against such risks and

to the extent customary in its industry, which shall include, but not be limited to, insurance

on all real property and improvements, equipment and inventory, against all reasonably

insurable hazards. Debtor shall further maintain or cause to be maintained public liability and worker's compensation insurance, in amounts customary in its industry.

Debtor shall provide to CoBank the number(s) of any and all insurance policies in effect, the names, addresses, and contact persons of any entities issuing such insurance, and a summary of the terms and payment arrangements for any such insurance policies. CoBank shall be named the first loss payee on such insurance policies.

Debtors shall pay all post-petition taxes, including but not limited to payroll, ad valorem, franchise, real property taxes, and personal property taxes, as they come due in the ordinary course of Debtor's business, and prior to assessment of any late fees or interest.

3.    **Deposit Accounts**. Debtor shall immediately segregate, remit, and deposit all cash receipts, Cash Collateral and all proceeds from the sale, transfer or other disposition of the and all other proceeds of such Prepetition Collateral of any kind which is now or shall come into the possession or control of the Debtor, or to which the Debtor is now or shall become entitled, into the debtor in possession bank accounts (the "Deposit Accounts"), and such collections and proceeds (a) shall be subject to and (b) shall be treated in accordance with this Interim Order.   Debtor shall not comingle the Cash Collateral, or the proceeds thereof, with any other funds.

4.    **Covenants and Reporting**. As part of the adequate protection provided to CoBank for the use of Cash Collateral, the Debtor shall comply with the following financial and reporting covenants:

A.    **Compliance with Budget.**    The Debtor shall comply with the Approved Budget. The Debtor shall not, as of any day, (a) permit aggregate disbursements by the Debtor for all expenses during the trailing four-week period, beginning with the period ending May 15, 2020, to exceed 110% of the aggregate amount of expenses set forth in the Approved Budget for such period, or (b) permit aggregate revenues of the Debtor generated in the ordinary course of business during the trailing four-week period, beginning with the period ending May 15, 2020, to be less than 90% of the amount of revenues set forth in the Approved Budget for such period.

B.    **Reporting.**

1.    <u>Original Reporting.</u>    The Debtor shall continue to comply with all reporting requirements of the Loan Documents and this Interim Order. The Debtor shall provide the same reporting information that the Debtor provided to CoBank prior to the Petition Date pursuant to the same schedule established prior to the Petition Date. As relevant to the time period covered by this Order, such reporting includes:

a.    <u>No more than 30 days after the end of each month</u>:

   i.  A consolidated balance sheet and a consolidated statement of income "for such period and for the period year to date";
   ii. Borrowing Base Report;
   iii. Operating reports;

       iv.  An updated monthly 13-week cash flow forecast (solely to add projections for 4 additional weeks beyond existing forecast); and

       v.  an accounts payable aging report.

2.    <u>Supplemental Reporting</u>. By 12:00 p.m. on May 20, 2020, and every week thereafter, the Debtor shall provide CoBank a weekly report (for the week ending the prior Friday) in a form approved by CoBank ("Weekly Report") reflecting the Debtor's actual receipts, disbursements, variances, and other information required by the Weekly Report form approved by CoBank. All balances of cash accounts shall be reported as "book balances" (i.e. net of outstanding checks or other outstanding but unpaid items). Among other information required by CoBank, the Weekly Report shall contain the following additional information:

a.  Lamb Purchases (All Sources/Total):

- Number of head delivered per week;
- Average weight per animal;
- Price per animal;
- Price per pound;
- Premiums and discounts; and
- Number of animals harvested per week purchased vs. custom.

b.  Lamb Purchases (from Insiders)/Disbursements to Insiders-- A break-out of all disbursements to made to insiders (*e.g.,* MSLW, MSL, Board Members or their business, Formula One, Frank Moore, Brad Boner and Jay Hasbrouck or entities they own or control), with the following detail for each insider-seller:

- Number of head delivered per week;
- Average weight per animal;

15

- Price per animal;
- Price per pound; and
- Premiums and discounts.

c.  A weekly A/R aging report (same format as A/R Aging accompanying the monthly Borrowing Base Report).

d.  A weekly inventory report including:
- Product description;
- Item #;
- Total value;
- Unit cost; and
- Units on hand.

3.     CoBank is entitled to and is expressly permitted to conduct periodic audits of the Collateral, Debtor's business, books, records, and accounting files during reasonable business hours and to have auditors and consultants conduct such audits on the Debtor's premises or virtually (with express authority to contact and interview third parties in connection with such audits).

4.     The Debtor shall file monthly operating reports with the Court each month as required by the U.S. Trustee and concurrently serve copies upon counsel for CoBank, the U.S. Trustee, and the Committee.

5.     The Debtor shall give CoBank prompt notice (with a copy to the Committee's counsel) of the occurrence of any of the following:

- An Event of Default or a Potential Default;
- The commencement of any suit or proceeding;
- The receipt of any notice or other document that may give rise to contribution liability;
- Any matter that could cause a Material Adverse Change; and

- Notice of change in name or corporate structure, organizational documents, or principal place of business.

**5.    Adequate Protection**.    Until the indefeasible repayment of the Secured Obligations, CoBank is entitled to adequate protection for its interests in the Prepetition Collateral as a result of (a) authorizing the use of Cash Collateral; (b) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; or (c) otherwise, pursuant to sections 105(a), 361(a), 363(c) and 363(e) of the Bankruptcy Code.

The Debtor shall pay CoBank adequate protection payments of $75,000, commencing May 15, 2020 and on the 15th day of each month thereafter.

Further, CoBank is hereby granted, solely to the extent of the diminution in value of the Prepetition Liens in the Prepetition Collateral from and after the Petition Date, all of the following (collectively, the "Adequate Protection Obligations"):

(a)    Adequate Protection Liens.  As of the Petition Date, CoBank is hereby granted valid, enforceable, unavoidable and fully perfected replacement liens and security interests (the "Adequate Protection Liens") in all prepetition and postpetition assets and property (tangible, intangible, real, personal, and mixed) of the Debtor whether now existing or hereafter acquired or arising, and wherever located, including but not limited to all contracts, accounts, deposit accounts, chattel paper, inventory, equipment, general intangibles, goods, real property, leases, cash and cash equivalents (including any funds released to the Debtor from escrow or

other segregated accounts), claims, causes of action and proceeds thereof (the "Postpetition Collateral," and together with the Prepetition Collateral, the "Collateral"); provided, however, that Postpetition Collateral shall not include (i) the claims and causes of action of the Debtor or its estate under sections 502(d), 544, 545, 547, 548, 550 and 553 and any other avoidance actions under the Bankruptcy Code (collectively, the "Avoidance Actions"), (ii) commercial tort claims or any proceeds thereof; (iii) titled vehicles or any proceeds thereof; (iv) property received or recovered in respect of any Avoidance Actions, whether by judgment, settlement or otherwise, whether pursuant to federal law or applicable state law (collectively, "Avoidance Action Proceeds"); (v) any proceeds of the Paycheck Protection Program loan from Converse County Bank; or (vi) the property of MPSC, Inc. The Adequate Protection Liens shall be supplemental to and in addition to the Prepetition Liens, shall attach with the same priority as enjoyed by the Prepetition Liens immediately prior to the Petition Date. The Adequate Protection Liens shall be deemed to be legal, valid, binding, enforceable, perfected liens, not subject to subordination or avoidance, for all purposes. The Adequate Protection Liens shall be in the same relative validity and priority in the Postpetition Collateral as CoBank's liens existed in the Prepetition Collateral. The Adequate Protection Liens shall not be subordinated to or be made *pari passu* with any other lien under sections 363 and 364 of the Bankruptcy Code or otherwise.   The

Adequate Protection Liens shall be deemed to be perfected automatically as of the Petition Date upon the entry of this Interim Order, without the necessity of filing of any UCC-1 financing statement, state or federal notice, mortgage or other similar instrument or document in any state or public record or office and without the necessity of taking possession or control of any collateral.

(b)    CoBank's Superpriority Claims. As of the Petition Date, CoBank is hereby granted superpriority administrative expense claims (the "Superpriority Claims") under sections 503 and 507 of the Bankruptcy Code against the Debtor's estate to the extent that the Adequate Protection Liens do not adequately protect against the diminution in value of the Prepetition Collateral, if any, which Superpriority Claims, if any, shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 503(b), 507(a), 507(b), 546(c), 726, 1113 and 1114, or otherwise and including those resulting from the conversion of this case pursuant to section 1112 of the Bankruptcy Code.

(c)    Right to Seek Additional Adequate Protection. This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of CoBank to seek additional forms of adequate protection or additional restrictions on the Debtor's use of Cash Collateral at any time.

6.      **No Waiver of Credit Agreement Provisions; Reservation of Rights**.

Except as otherwise specifically provided in this Interim Order, nothing contained in this Interim Order shall be deemed a waiver or constitute a consent to the modification of any provision contained in the Credit Agreement by CoBank, including, but not limited to, the incurrence or issuance of any indebtedness by the Debtor, the incurrence of any lien in connection therewith or the making of any payment by the Debtor. Further, notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a limitation on or waiver of, expressly or implicitly: (a) the rights of CoBank to seek any other or supplemental relief in respect of the Debtor or any non-debtor Borrowers or Guarantors, (b) the rights of CoBank under the Loan Documents, the Bankruptcy Code or other applicable law, or (c) any rights, claims or privileges (whether legal, equitable or otherwise) of CoBank. Entry of this Interim Order likewise does not constitute a waiver, expressly or implicitly, of the Debtor's or any other party-in-interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence.

7.      **Default, Termination of Cash Collateral Usage, and Other Remedies**.

Anything in this Interim Order to the contrary notwithstanding, the Debtor shall be prohibited from using the Cash Collateral, absent further order of this Court, upon Termination, including Termination effected through the service by CoBank of written notice to the Debtor and its counsel, the Court, the Committee and its counsel and the U.S.

Trustee that an Event of Default has occurred and is continuing. For purposes of this

Interim Order, an "Event of Default" shall occur upon:

(a) The failure by the Debtor to comply with any of the material terms, conditions, or covenants of this Interim Order, including, without limitation, the failure by the Debtor to comply with the Approved Budget;

(b) Any representation or warranty made by the Debtor in any certificate, report, or financial statement delivered to CoBank after the Petition Date proving to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty, or statement not misleading);

(c) The commencement of any action by Debtor, MSLW, and/or MSL against CoBank;

(d) Without the prior written consent of CoBank, the appointment of a Chapter 11 trustee or examiner;

(e) Without the prior written consent of CoBank, the granting of a motion seeking to grant a third party a security interest or lien upon all or part of any property of the Debtor that has a priority which is senior to, or equal with, CoBank's Prepetition Liens or the Adequate Protection Liens in all or any portion of such property;

(f) Without the prior written consent of CoBank, the granting by the Court of a motion for relief from the automatic stay in favor of any party, other than CoBank, with

respect to any material portion of the Prepetition Collateral or postpetition collateral
(including, but not limited to, any Cash Collateral);

(g) The conversion of this case to a case under Chapter 7 of the Bankruptcy Code;

(h) Without the prior written consent of CoBank, the granting of any motion to amend
or modify the terms of this Interim Order; or

(i) The reversal or vacatur of this Interim Order by the Court or any appellate court.

To the extent that an Event of Default is a payment default or otherwise
susceptible to cure, the written notice from CoBank shall afford the Debtor three (3)
business days' opportunity to cure such Event of Default.

8.    **Further Assurances**. The Debtor shall execute and deliver to CoBank all
such agreements, financing statements, instruments and other documents as CoBank may
reasonably request to evidence, confirm, validate or perfect the Adequate Protection Liens
granted pursuant hereto. Further, the Debtor is authorized and directed to do and perform
all acts, to make, execute and deliver all instruments and documents (including, without
limitation, the execution of additional security agreements, mortgages and financing
statements), and shall pay fees and expenses that may be required or necessary for the
Debtor's performance under this Interim Order.

9.    **Restrictions on Granting Post-Petition Liens**. No claim or lien having a
priority superior or *pari passu* with those granted by this Interim Order to CoBank shall be

granted or permitted by any order of this Court heretofore or hereafter entered in this proceeding while any portion of the Secured Obligations are outstanding.

10.    **Automatic Effectiveness of Liens**.    Upon the entry of this Order, the Adequate Protection Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further action by the Debtor or CoBank and without the necessity of execution by the Debtor, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office or the Library of Congress, or other documents or the taking of any other actions. If CoBank requests that the Debtor execute and deliver to CoBank financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by such agent to be reasonably necessary or desirable to further evidence the perfection of the Adequate Protection Liens, the Debtor is hereby authorized and directed to execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and CoBank is hereby authorized to file or record such documents in its discretion without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

11.    **Carve-Out for United States Trustee Fees and Professional Fees**. Subject

to the terms and conditions contained in this paragraph, all claims under Section 507(b) of

the Bankruptcy Code are subordinate to the Carve-Out (as defined below).  As used herein,

the term "Carve-Out" shall mean: (a) amounts payable pursuant to 28 U.S.C. § 1930(a)(6)

and fees payable to the clerk of the Court, (b) $40,000 total for reasonable fees and

expenses of attorneys and financial advisors employed by the Debtor (up to $20,000) or by

the Committee (up to $20,000) (including allowed expenses of the members of such

statutory committees) pursuant to sections 327 and 1103 of the Bankruptcy Code incurred

following an Event of Default (for the avoidance of doubt, such limitation applies to fees

and expenses incurred following an Event of Default, and is not a limitation of fees and

expenses incurred prior to an Event of Default provided that they are in accordance with

the Budget and that the Court approves payment of the same).  The Carve-Out shall exclude

any fees and expenses incurred in connection with the assertion or joinder in any claim,

counterclaim, action, proceeding, application, motion, objection, defenses or other

contested matter, the purpose of which is to seek any order, judgment, determination or

similar relief invalidating, setting aside, avoiding, subordinating, or otherwise adversely

affecting the claims against the Estate held by CoBank (including the Secured Obligations

and CoBank's liens on the Collateral).

     12.    **<u>Challenge of Claim or Lien.</u>** The stipulations of the Debtor in paragraph D

of hereof shall be binding on the Estate, all parties in interest, including, without limitation,

any Committee, unless the Committee or other party in interest has filed an adversary

proceeding or contested matter challenging any such acknowledgements or admissions, or asserting claims related to the validity, enforceability, priority or extent of the Secured Obligations held by or on behalf of CoBank or otherwise asserting or prosecuting any Avoidance Actions or any other claims or causes of action, objections, or contests (collectively, "Challenges") no later than the date that is the earlier of (a) five (5) business days prior to the initial scheduled hearing date regarding any sale of the Prepetition Collateral; or (b) 60 calendar days after the entry of this Interim Order (the "Challenge Deadline"). The Challenge Deadline may be extended upon: (i) entry of an order of the Court upon notice and a hearing; or (ii) in writing by CoBank in its sole and absolute discretion. If no such Challenge is timely commenced as of the Challenge Deadline, the Secured Obligations shall constitute allowed secured claims of CoBank, not subject to objection or subordination and otherwise unavoidable, and the pre-petition liens of CoBank on the Prepetition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind or subordination, and otherwise unavoidable.

13. **Right to Credit Bid.** The right of CoBank to credit bid obligations owed to CoBank by the Debtor (pursuant to section 363(k) of the Code), in whole or in part, in connection with any sale or disposition of assets in the case is hereby expressly reserved and preserved by this Interim Order.

14. **Binding Effect**. The provisions of this Interim Order shall be binding upon and inure to the benefit of CoBank, the Debtor, the Committee, and their respective

successors and assigns (including any Chapter 7 or Chapter 11 trustee hereinafter appointed

or elected for the Debtor's estate, an examiner appointed pursuant to section 1104 of the

Bankruptcy Code or any other fiduciary appointed as a legal representative of the Debtor

or with respect to the property of the estate of the Debtor). To the extent permitted by

applicable law, this Interim Order shall bind any trustee hereafter appointed for the estate

of the Debtor, whether in this Chapter 11 proceeding or, in the event of the conversion, to

any liquidation under Chapter 7 of the Bankruptcy Code.  Such binding effect is an integral

part of this Interim Order.

15.   **Survival**.   The provisions of this Interim Order and any actions taken

pursuant hereto shall survive the entry of any order: (i) confirming any plan of liquidation

or reorganization in this Chapter 11 proceeding; (ii) converting this Chapter 11 proceeding

to Chapter 7; or (iii) dismissing this Chapter 11 proceeding, and the terms and provisions

of this Interim Order as well as the Adequate Protection Liens and Superpriority Claims

granted pursuant to this Interim Order shall continue in full force and effect

notwithstanding the entry of any such order. Such claims and liens shall maintain their

priority as provided by this Interim Order, and to the maximum extent permitted by law,

until all of the Obligations and the Adequate Protection Obligations are indefeasibly paid

in full and discharged. If any or all of the provisions of this Interim Order are hereafter

reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not

affect the validity, priority or enforceability of any Adequate Protection Obligations

incurred prior to actual receipt of written notice to CoBank of the effective date of such

reversal, stay, modification or vacatur. Prior to actual receipt of written notice by CoBank

of the effective date of any reversal, stay, modification or vacatur, any use of Collateral

(including Cash Collateral) or any Adequate Protection Obligations incurred by the Debtor

hereunder, as the case may be, shall be governed in all respects by the original provisions

of this Interim Order, and CoBank shall be entitled to all of the rights, remedies, privileges

and benefits, including the Adequate Protection Obligations, provided thereunder.

16.    **Reallocation.** For the avoidance of doubt, in the event that it is determined

by this Court that CoBank did not maintain valid, perfected and enforceable liens on the

Prepetition Collateral, the Court reserves the right to reallocate any payments made to

CoBank and modify any liens and claims granted pursuant to this Interim Order, including

the grant of adequate protection to CoBank.

17.    **Restriction on Use of Cash Collateral**.   Notwithstanding anything herein

to the contrary, for so long as the Debtor is authorized to use CoBank's Cash Collateral

with the consent of CoBank, no Cash Collateral may be used directly or indirectly by the

Debtor, any Committee or any other person or entity to object to or contest in any manner

the Secured Obligations or Prepetition Liens, or to assert or prosecute any actions, claims

or causes of action against CoBank without the consent of CoBank.

18.    **Effect of Dismissal/Conversion**. If this Chapter 11 proceeding is dismissed,

converted or substantively consolidated, then neither the entry of this Interim Order nor the

dismissal, conversion or substantive consolidation of this Chapter 11 proceeding shall affect the rights of CoBank under the Loan Documents or this Interim Order, and all of the respective rights and remedies thereunder of CoBank shall remain in full force and effect as if this Chapter 11 proceeding had not been dismissed, converted, or substantively consolidated. If an order dismissing this Chapter 11 proceeding is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that: (i) those Prepetition Liens, Adequate Protection Liens and Superpriority Claims granted to and conferred upon CoBank, as applicable, shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Obligations shall have been paid and satisfied in full (and that such Superpriority Claims shall, notwithstanding such dismissal, remain binding on all interested parties); and (iii) to the greatest extent permitted by permissible law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the Prepetition Liens, Adequate Protection Liens, and Superpriority Claims referred to herein.

19. **Retention of Jurisdiction**. The Bankruptcy Court shall retain exclusive jurisdiction to hear and determine any and all disputes or matters under, or arising out of or in connection with, this Interim Order.

20. **Order Effective**. This Interim Order shall be effective as of the date of the signature by the Court and, notwithstanding anything to the contrary in Bankruptcy Rules 4001(a)(3) or 6004(h), shall not be stayed absent the grant of a stay under Bankruptcy Rule

8005 after a hearing upon notice to the Debtor and CoBank.

21.     **No Requirement to Accept Title to Collateral**.   CoBank shall not be obligated to accept title to any portion of the Prepetition Collateral in payment of the indebtedness owed to such party by the Debtor, in lieu of payment in cash or cash equivalents, nor shall CoBank be obligated to accept payment in cash or cash equivalents that is encumbered by any interest of any person or entity other than CoBank.

22.     **Controlling Effect of Interim Order**. To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, any prepetition agreement, or prior order regarding use of cash collateral, the provisions of this Interim Order shall control.

By The Court:

5/14/2020
_____
HONORABLE CATHLEEN D. PARKER
UNITED STATES BANKRUPTCY COURT

| Mountain States Rosen, LLC<br>Cash Flow Forecast<br>*Updated on 5/13/2020* | 9<br>Fcst<br>5/15/20<br>Thur Friday | 10<br>Fcst<br>5/22/20<br>Friday | 11<br>Fcst<br>5/29/20<br>Friday | 12<br>Fcst<br>6/5/20<br>Friday | 13<br>Fcst<br>6/12/20<br>Friday | 14<br>Fcst<br>6/19/20<br>Friday | 15<br>Fcst<br>6/26/20<br>Friday | 16<br>Fcst<br>7/3/20<br>Friday | 17<br>Fcst<br>7/10/20<br>Friday | 18<br>Fcst<br>7/17/20<br>Friday | 19<br>Fcst<br>7/24/20<br>Friday | 20<br>Fcst<br>7/31/20<br>Friday | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SALES** | $ 1,100 | $ 1,100 | $ 1,100 | $ 1,100 | $ 1,100 | $ 1,100 | $ 1,100 | $ 850 | $ 850 | $ 850 | $ 850 | $ 850 | $ 18,842 |
| **CASH FLOW** | | | | | | | | | | | | | |
| **Operating Cash Receipts** | 1,118 | 1,285 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 850 | 850 | 13,766 |
| **Operating Cash Disbursements** | | | | | | | | | | | | | |
| Colorado Disbursements | | | | | | | | | | | | | |
| Operating Disbursements | | | | | | | | | | | | | |
| Raw Material Purchases | 609 | 288 | 288 | 288 | 288 | 288 | 288 | 288 | 288 | 288 | 288 | 288 | 4,065 |
| Payroll & Benefits* | 212 | 413 | 218 | 236 | 414 | 235 | 212 | 413 | 218 | 236 | 437 | 210 | 3,454 |
| Plant Expenses | 192 | 249 | 192 | 197 | 192 | 249 | 192 | 192 | 197 | 247 | 170 | 167 | 2,631 |
| Utilities* | 4 | 3 | 27 | 73 | 4 | 73 | 4 | 4 | 27 | 73 | 4 | 12 | 306 |
| Total Colorado Operating Disbursements | 1,017 | 954 | 725 | 794 | 898 | 845 | 696 | 897 | 730 | 844 | 898 | 678 | 10,456 |
| **TOTAL NET OPERATING CASH FLOW** | 101 | 331 | 375 | 306 | 202 | 255 | 404 | 203 | 370 | 256 | (48) | 172 | 3,310 |
| **NON-OPERATING CASH FLOW** | | | | | | | | | | | | | |
| **Non-Operating Cash Receipts** | | | | | | | | | | | | | - |
| **Non-Operating Cash Disbursements** | | | | | | | | | | | | | - |
| **Bankruptcy Disbursements** | | | | | | | | | | | | | |
| US Trustee Fees | 44 | - | - | - | - | - | - | - | - | 63 | - | - | 107 |
| MSR Legal Fees | - | - | 100 | - | - | - | 100 | - | - | - | - | - | 200 |
| MSR Accounting Fees | - | - | - | - | - | - | - | - | - | - | - | - | - |
| MSR Financial Consulting Fees | - | - | 50 | - | - | - | 50 | - | - | - | - | - | 100 |
| CoBank Adequate Protection | 75 | - | - | - | - | 75 | - | - | - | 75 | - | - | 225 |
| Committee Professional Fees | - | - | 75 | - | - | - | 75 | - | - | - | 75 | - | 225 |
| Contingency Fees | - | 20 | - | - | - | 20 | - | - | - | 20 | - | - | 60 |
| Total Bankruptcy Disbursements | 119 | 20 | 225 | - | - | 95 | 225 | - | - | 158 | 75 | - | 917 |
| **TOTAL NON-OPERATING CASH FLOW** | (119) | (20) | (225) | - | - | (95) | (225) | - | - | (158) | (75) | - | (917) |
| **TOTAL NET CASH FLOW** | $ (18) | $ 311 | $ 150 | $ 306 | $ 202 | $ 160 | $ 179 | $ 203 | $ 370 | $ 99 | $ (123) | $ 172 | $ 2,394 |
| **CUMULATIVE TOTAL NET CASH FLOW** | $ 2,993 | $ 3,305 | $ 3,455 | $ 3,761 | $ 3,962 | $ 4,123 | $ 4,301 | $ 4,505 | $ 4,875 | $ 4,973 | $ 4,850 | $ 5,023 | |
| **BBC EXCESS/(DEFICIT) AVAILABILITY** | $ 74 | $ 74 | $ 74 | $ 74 | $ 74 | $ 74 | $ 74 | $ 74 | $ 74 | $ 74 | $ 74 | $ 74 | $ 74 |
| **FINAL CUMULATIVE TOTAL NET CASH FLOW** | $ 2,993 | $ 3,305 | $ 3,455 | $ 3,761 | $ 3,962 | $ 4,123 | $ 4,301 | $ 4,505 | $ 4,875 | $ 4,973 | $ 4,850 | $ 5,023 | |

*these expenses will be paid with proceeds of the PPP loan to the extent allowable. The current balance of the PPP Loan is $2,459,000

Case 20-20111    Doc 119    Filed 06/14/20    Entered 05/14/20 16:25:42    Document    Page 30 of 30    D