Thomas R. Fawkes (*pro hac vice*)
Brian J. Jackiw (*pro hac vice*)
Frederick D. Cruz (*pro hac vice*)
**Tucker Ellis LLP**
233 S. LaSalle Street, Suite 6950
Chicago, Illinois 60606
Telephone: (312) 624-6300
Facsimile: (312) 624-6309

Counsel to the Official
Committee of Unsecured Creditors

Terry W. Connolly
**Patton & Davison LLC**
1920 Thomes Ave., Suite 600
Cheyenne, Wyoming 82001
Telephone: (307) 635-4111
Facsimile: (307) 635-6904

Local Counsel to the Official
Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| In re: | Case No. 20-20111 |
| MOUNTAIN STATES ROSEN, LLC, | Chapter 11 |
| Debtor. | |

### LIMITED OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF DEBTOR FOR ENTRY OF AN ORDER (A) APPROVING BID PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; AND (B) APPROVING BREAK-UP FEE

The Official Committee of Unsecured Creditors (the "*Committee*") appointed in the above-captioned bankruptcy case, by its undersigned counsel, hereby submits this Limited Objection (the "*Limited Objection*") to the Motion of Debtor for Entry of Substantially All of the Debtor's Assets; and (B) Approving the Break-Up Fee (the "*Bid Procedures Motion*"). In support hereof, the Committee respectfully states as follows:

## BACKGROUND

1. On March 19, 2020 (the "*Petition Date*"), the above-captioned debtor (the "*Debtor*") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Wyoming (the "*Court*"). The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. On April 3 and April 7, 2020, the Office of the United States Trustee appointed the Committee as an official committee to represent the interests of unsecured creditors of the Debtors pursuant to section 1102 of the Bankruptcy Code [Docket No. 36, 38, and 41].

3. The Debtor filed this chapter 11 case with the objective of selling substantially all of its assets pursuant to a competitive bidding and auction process governed by section 363 of the Bankruptcy Code. On May 29, 2020, the Debtor filed the Bid Procedures Motion, seeking, among other things, entry of order approving proposed procedures for the auction of the Debtor's assets (the "*Bid Procedures*"), and approving certain bid protections, including a $75,000 break-up fee and a $75,000 expense reimbursement, payable to the Debtor's proposed stalking horse bidder, Greeley FAB, LLC (the "*Stalking Horse*") in the event it is not the prevailing bidder at auction.

4. In the Bid Procedures Motion and the companion Motion of Debtor Mountain States Rosen, LLC for an Order: (A) Approving Asset Purchase Agreement and Authorizing the Sale of Substantially All of the Debtor's Assets; (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Rights, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 363(b), 363(f) and 363(m); (C) Assuming and Assigning Certain Executory Contracts and Unexpired Leases Pursuant to Bankruptcy Code Section 365; and (D) Granting Related Relief (the "*Sale Motion*"), the Debtor discloses that the Stalking Horse is an "insider"

2

of the Debtor as defined in section 101(31) of the Bankruptcy Code. The Committee believes that the Stalking Horse's members (whose identities have not been disclosed publicly by the Debtor) are members of either the direct or indirect owner of the Debtor.

### **LIMITED OBJECTION**

5. As a general matter, the Committee supports a competitive auction process that will maximize the value of the Debtor's assets for the benefit of the estate and creditors. Along these lines, the Committee does not object to the proposed Bid Procedures. However, the Committee does submit this Limited Objection as to the $75,000 break-up fee (the "*Break-Up Fee*") requested by the Stalking Horse.

6. A break-up fee is intended to encourage potential purchasers to make bids, and to promote higher and better bids through an auction process. *In re Twenver, Inc. d/b/a KTVD Channel 20*, 149 B.R. 954, 955 (Bankr. D. Colo. 1992). The *Twenver* court noted, however, that reasonable limitations must be placed on break-up fees, and that in certain instances they may not be approved at all. "This is because bidding incentives impose expenses on the debtor's estate and do not merely affect shareholders as in the corporate control cases, but affect the debtor, creditors, and equity holders alike." *Id.* at 956-957.

7. The *Twenver* court cited favorably to two decisions setting forth certain factors to be considered by courts when evaluating the propriety of a proposed break-up fee. First, the U.S. District Court for the Southern District of New York, in *In re Integrated Resources, Inc.*, 147 B.R. 650, 657 (S.D.N.Y. 1992), held that the following factors should be considered: (1) whether the relationship of the parties who negotiated the fee is marked by self-dealing or manipulation; (2) whether the fee hampers, rather than encourages, bidding; and, (3) whether the amount of the fee is reasonable in relation to the proposed purchase price. Second, in *In*

*re Hupp Industries, Inc.*, the U.S. Bankruptcy Court for the Northern District of Ohio utilized the following factors:

    a. Whether the fee requested correlates with maximization of value to the debtor's estate;

    b. Whether the underlying negotiated agreement is an arms-length transaction between the debtor's estate and the negotiating acquirer;

    c. Whether the principal secured creditors and the official creditors committee are supportive of the concession;

    d. Whether the subject break-up fee constitutes a fair and reasonable percentage of the proposed purchase price;

    e. Whether the dollar amount of the break-up fee is so substantial that it provides a "chilling effect" on other potential bidders;

    f. The existence of available safeguards beneficial to the debtor's estate; and

    g. Whether there exists a substantial adverse impact upon unsecured creditors, where such creditors are in opposition to the break-up fee.

*Id.* at 194.

    8.    Courts have further (and repeatedly) held that any transaction involving a debtor and an insider is subject to heightened scrutiny. *In re Holloway*, 955 F.2d 1008, 1012 (5th Cir. 1992) ("Because of the closeness of the relationship between [insider] and [debtor], we turn to give our careful scrutiny to the subject transactions."). This scrutiny extends to a request for approval of a break-up fee or other bid protections in the context of an insider bid. *See In re Philadelphia Newspapers*, LLC, 2009 WL 3242292, at *12 (Bankr. E.D. Pa. Oct. 8, 2009) (applying heightened scrutiny standard to transaction involving insider and denying requested break-up fee), *rev'd on other grounds*, 418 B.R. 548 (E.D. Pa. 2009). As such, the

approval of a break-up fee to the Stalking Horse is not subject to the business judgment rule that typically governs such requests, but rather, the far more stringent administrative expense standard under section 503(b) of the Bankruptcy Code. *Compare Integrated Resources*, 147 B.R. 650 (business judgment rule applies to non-insider transaction) *with In re Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010) (applying administrative expense standard to proposed insider break-up fee and expense reimbursement).

9. Here, not only may the proposed Break-Up Fee be objectionable under the standards favorably cited by *Twenver*,[1] but are most certainly objectionable under the heightened standard adopted by *Philadelphia Newspapers* and *Reliant Energy*. While the amount of the Break-Up Fee in relation to the overall transaction value does not appear to be excessive, the Committee questions why a Break-Up Fee under these circumstances is necessary or reasonable in the first place. In a market with virtually no (according to the Debtor) interest by financial buyers, and a discrete list of potentially interested strategic buyers, creating a competitive climate that promotes competitive bidding is absolutely essential. As such, the barriers to entry (i.e., the required minimum overbid) should be kept to an absolute minimum. Moreover, given the high level of familiarity of the Stalking Horse with the Debtor's assets and operations, it should be presumed that the Stalking Horse has not had to invest much in the way of due diligence in evaluating this transaction. Finally, the Stalking Horse does not need an additional incentive – other than having a going-forward purchaser for the lamb it is raising – to be an active participant in the sale process. As such,

---

[1] The following *Hupp Industries* standards have not been met: (i) the Committee does not support the Break-Up Fee; (ii) the underlying transaction is not arms' length (in that the Debtor's insiders are on both sides of the transaction); and (iii) other safeguards are already available in the Bid Procedures, including the $100,000 minimum overbid.

there is no legitimate need to provide the Stalking Horse a Break-Up Fee in exchange for its willingness to serve as a stalking horse.

10. Eliminating the Break-Up Fee will provide a benefit to the estate, in that the minimum competing bid price will be reduced by a corresponding amount. It is hoped that this reduction will incentivize potential non-insider parties to participate in an auction process and submit competing bids, resulting in a robust auction in which substantial additional value can be generated for creditors.

**WHEREFORE**, the Committee respectfully requests that the Court (a) sustain its Limited Objection reducing the break-up fee by $75,000; and (b) granting such other and further relief as the Court deems appropriate.

Dated: June 9, 2020

Respectfully submitted,

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MOUNTAIN STATES ROSEN, LLC**

Thomas R. Fawkes (*pro hac vice*)
Brian J. Jackiw (*pro hac vice*)
Frederick D. Cruz (*pro hac vice*)
Tucker Ellis LLP
233 S. LaSalle Street, Suite 6950
Chicago, Illinois 60606
Telephone: (312) 624-6300
Facsimile: (312) 624-6309

- and -

By: /s/ Terry W. Connolly
Terry W. Connolly WSB #6-3447
Patton & Davison LLC
1920 Thomes Ave., Suite 600
Cheyenne, Wyoming 82001
Telephone: (307) 635-4111
Facsimile: (307) 635-6904

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was served on June 9, 2020, upon all parties registered to receive electronic notice in this case through CM/ECF.

_____
Terry W. Connolly